**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**LISA LYNN SPARKS,**

      Plaintiff,

          v.                    Civil Action No. 2:14-CV-00016
                                      The Honorable John Preston Bailey

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security**,

      Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATIONS**

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge John S. Kaull [Doc. 19]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Kaull filed his R&R on August 14, 2014, wherein he recommends that the Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment be denied. The plaintiff timely filed Objections to the R & R [Doc. 20]. For the reasons set forth below, this Court adopts Magistrate Judge Kaull's R&R.

**I. BACKGROUND**

Plaintiff, Lisa Lynn Sparks, filed an application for Title II Disability Insurance Benefits on November 12, 2010. [Doc. 9-2 at 12]. Her claim was first denied on April 13, 2011 and again upon reconsideration on August 2, 2011. *Id.* Plaintiff then requested and received a hearing before United States Administrative Law Judge Jeffrey P. LaVicka

1

[hereinafter "ALJ"]. *Id.* At this hearing, the ALJ found that the plaintiff was not disabled. Further, he made the following determination of the plaintiff's residual functional capacity

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the work must: entail no climbing of ladders, ropes and scaffolds and only occasional claiming [sic] of ramps or stairs, balancing, stooping, kneeling, crouching and crawling; entail only occasional overhead reaching with the right arm; and avoid concentrated exposure to extreme cold and heat and all exposure to unprotected heights, hazards machinery and commercial driving.

*Id.* at 17. Thereafter, the Appeals Council reviewed and subsequently upheld the ALJ's decision. [Doc. 9-2 at 2]. As such, the plaintiff has exhausted her administrative remedies.

The plaintiff then sought review in this Court. [Doc. 1 at 2]. The United States Magistrate Judge John S. Kaull submitted his R & R [Doc. 19]. The R & R provides a detailed discussion regarding the plaintiff's medical history. Therefore, the undersigned will dispense with the same. Rather, the undersigned will reference the pertinent records when applicable.

## II. STANDARD OF REVIEW

When reviewing a Magistrate Judge's proposed findings of fact and recommendations, this Court must make a "*de novo* determination of those portions of the report . . . to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (West 2014).

Although this Court will review the Magistrate Judge's R & R under a *de novo* standard of review, this Court's review of the underlying ALJ's decision is limited. *See* **Smith v. Schweiker**, 795 F.2d 343, 345 (4th Cir. 1986). Pursuant to 42 U.S.C. § 405(g)

2

(West 2014), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The standard for the substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" **Richardson v. Perales**, 402 U.S. 389, 401 (1971) (citation omitted). When analyzing whether the ALJ's decision was supported by substantial evidence, this Court must determine whether the ALJ "consider[ed] all relevant evidence." **Sterling Smokeless Coal Co. v. Akers,** 131 F.3d 438, 339 (4th Cir. 1997). With these standards in mind, this Court will turn to the objections raised by the plaintiff.

### III. DISCUSSION

The plaintiff asserts two objections to the Magistrate Judge's Report. First, the plaintiff asserts that the Magistrate Judge erred by finding that the ALJ's decision was supported by substantial evidence. The plaintiff argues that the ALJ did not properly evaluate and weigh medical opinion evidence included in the record, thus, the ALJ's residual functional capacity ("RFC") assessment lacked evidentiary support. [Doc. 20 at 2]. Second, plaintiff argues that the Magistrate Judge erred when finding that the ALJ's failure to consider the Vocational Expert's ("VE") testimony was harmless error. *Id.* at 5.

**A.    The ALJ's residual functional capacity assessment of plaintiff was supported by substantial evidence.**

When determining whether an individual is disabled, the ALJ is directed to use the following five step process:

> i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)

3

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 404.1560(b).
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 404.1560(c).

*See* 20 C.F.R. § 404.1520 (West 2014). In his opinion, the ALJ found that plaintiff suffers from two severe impairments, including right ulnar neuropathy, and right shoulder adhesive capsulitis/chronic neck sprain. [Doc. 9-2 at 14]. After finding that the plaintiff had two severe impairments, the ALJ found that these severe impairments did not render the plaintiff disabled at step three. *Id.* at 16. Next, the plaintiff's RFC was determined. The ALJ found that:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the work must: entail no climbing of ladders, ripes and scaffolds and only occasional claiming [sic] of ramps or stairs, balancing, stooping, kneeling, crouching and crawling; entail only occasional overhead reaching with the right arm; and avoid concentrated exposure to extreme cold and heat and all exposure to unprotected heights,

4

hazards machinery and commercial driving.

*Id.* at 17. This is the step to which plaintiff objects. The plaintiff argues that the ALJ's "failure to give full weight to any of the medical opinions created a vacuum of medical opinion and he impermissibly substituted his own lay opinion regarding the work-related limitations that were justified by the medical evidence to formulate his RFC." [Doc. 20 at 4].

The ALJ is directed to use all relevant medical and other evidence when assessing an individual's RFC. *See* 20 C.F.R. § 404.1545. This includes evidence from medical examinations, opinions from medical sources, and descriptions and statements from the applicant regarding the applicant's abilities. *See id.* The Social Security Administration directs the ALJ to consider all medical opinions in its RFC determination. *See id.* Pursuant to 20 C.F.R. § 404.1527, the ALJ is directed to assess opinions as follows:

> *How we consider medical opinions.* In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.
>
> *How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> > (1) *Examining relationship.* Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> > (2) *Treatment relationship.* Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-

5

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) *Supportability.* The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5) *Specialization.* We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) *Other factors.* When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. . . .

The ALJ must provide reasoning for the weight he assigned to "all relevant evidence." *See* ***Gordon v. Schweiker***, 725 F.2d 231, 235 (4th Cir. 1984) (holding that a court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all the relevant evidence."); *see also* 20 C.F.R. § 404.1520. However, contrary to plaintiff's argument, this does not require that the ALJ give "full weight" to any of the medical opinions.

Further, a treating physician's opinion does not demand controlling weight if it is inconsistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527 (c)(2); *see also* ***Craig v. Chater***, 76 F.3d 585, 589 (4th Cir. 1996) (holding "a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.").

In her argument, plaintiff specifically points to the portion of the ALJ's opinion that discredited part of Physical Therapist John DiBacco's opinion. Like the Magistrate Judge's R & R, this Court finds that ALJ's decision to place "little weight" on PT DiBacco's opinion that plaintiff could neither crawl, nor operate controls with her right upper extremity and that plaintiff was limited in overhead reaching was supported by substantial evidence. [Doc. 9-2 at 21].

First, the ALJ's opinion that plaintiff could occasionally crawl is supported by both Dr. Fulvio Franyutti and Kay Means's Physical Residual Functional Capacity Assessments of plaintiff. Kay Means found that plaintiff could frequently climb, stoop, kneel, crouch, and crawl. [Doc. 9-3 at 8]. In Dr. Franyutti's assessment on April 28, 2009, he found that the plaintiff could occasionally crawl. [Doc. 9-7 at 60].

Further, PT DiBacco's opinion that plaintiff is not capable of operating controls with her right upper extremity was contradicted by other evidence in the record. Neither Kay Means nor Dr. Franyutti's assessments indicated that the plaintiff was limited in operating controls with her right upper extremity. [Doc. 9-3 at 7, Doc. 9-7 at 59]. Moreover, plaintiff's treating physician, Dr. Topping, never indicated that plaintiff was unable to operate controls with her right upper extremity.

Plaintiff also objects to the portion of the ALJ's opinion that gave little weight to PT DiBacco's finding that plaintiff was "limited to only frequent forward reaching." [Doc. 9-2 at 21]. In his report, Dr. Franyutti indicated that plaintiff was limited in reaching and lifting with her right upper extremity, but could do those activities occasionally. [Doc. 9-7 at 58-65]. Dr. Franyutti's assessment is consistent with the ALJ's finding in his RFC that plaintiff's work could only entail "occasional overhead reaching with the right arm." In making this determination, the ALJ considered objective evidence from the plaintiff's residual capacity assessments: both Dr. Franyutti and Kay Means indicated that the plaintiff could frequently lift or carry ten pounds. [Doc. 9-7 at 59, Doc. 9-3 at 7].

As discussed above, when formulating a claimant's RFC, the ALJ, in addition to medical evidence, is directed to consider descriptions and statements from the applicant regarding the applicant's abilities. Here, the ALJ discussed the plaintiff's lack of seeking

8

medical treatment and her activities of daily living, which include, but are not limited to, personal hygiene, and household chores, such as cleaning, laundry, and cooking. [Doc. 9-2 at 46-47]. The plaintiff's extensive daily activities together with the contradictory medical evidence provided substantial evidence to support the ALJ's finding that plaintiff has the residual functional capacity to perform sedentary work with the limitations that plaintiff only occasionally engage in overhead reaching with the right arm.

**B.     The ALJ's decision to not include a limitation for handling, fingering, and feeling was supported by substantial evidence.**

Plaintiff's next objection is regarding the VE's testimony at the ALJ hearing. At the hearing, the ALJ asked the VE the following:

> [a]ssume a hypothetical individual the same age, education, and work experience as the claimant who retains the capacity to perform sedentary work with occasional postural except no climbing of ladders, ropes or scaffolds, who's limited to occasional overhead reaching with the right arm, who must avoid concentrated exposure to cold and heat, and who must avoid all exposure to unprotected heights, hazardous machinery, and commercial driving. Would such an individual be capable of performing the claimant's past work?

[Doc. 9-2 at 54-59]. The VE responded that the individual would not be able to perform the claimant's past work, but would be able to perform the jobs of table worker, quotation clerk, and order clerk. *Id.* The VE also testified that 490 total jobs in these classifications exist in the regional economy. Upon cross-examination, the plaintiff's counsel posed the same hypothetical to the VE, but added the additional restriction of "only occasional handling, fingering, and feeling, as seen in [exhibits] 6F, 14F, and 19F . . . With just the right arm, would that change your answers for the sedentary jobs available?" With the additional restriction on the right arm, the VE eliminated the quotation clerk from the available jobs. *Id.* at 57.

Here, plaintiff objects that the ALJ failed to consider this testimony because it "rais[es] the issue of whether there would be a significant number of jobs available if that job were not performable." [Doc. 20 at 6]. The Magistrate Judge found the ALJ's determination that plaintiff was not limited in handling, fingering, and feeling was supported by substantial evidence. The Magistrate Judge also found that even if the ALJ erred in his assignment of weight to these opinions, this would only amount to harmless error. [Doc. 19 at 31]. Because this Court finds that the ALJ's decision in this regard was supported by substantial evidence, it will dispense with the harmless error analysis.

The ALJ explained his reasoning for finding that the plaintiff did not have a limitation in handling, fingering, and feeling. [Doc. 9-2 at 21]. The ALJ discussed plaintiff's right ulnar neuropathy and surgery in May 2008. Although Dr. Franyutti opined that the plaintiff had limitation with handling, fingering, and feeling, the ALJ placed little weight on this medical opinion because of other evidence in the record. [Doc. 9-2 at 21]. Instead, he considered the plaintiff's lack of treatment and her extensive activities of daily living, including her testimony that she pushes her five-month old son in a stroller two to three times a week. [Doc. 9-2 at 38-39]. Moreover, the ALJ also afforded PT DiBacco's report significant weight in this regard. At the examination with PT DiBacco, the plaintiff's "manual muscle testing showed 5/5 strength through the right wrist" and she "demonstrated fair fine motor skills when working with objects several mm in size." [Doc. 9-2 at 21].

Based on the foregoing, this Court finds that ALJ's determination of the plaintiff's RFC was supported by substantial evidence. Indeed, the only mention of the job "quotation clerk" being eliminated was when plaintiff's own counsel raised it in his hypothetical to the VE. The ALJ certainly never agreed that the position should be eliminated in determining

the number of jobs available. Therefore, the plaintiff's assertion that it "[r]aises the issue of whether there would be a significant number of jobs available if that job were not performable" is misplaced.

### IV. CONCLUSION

For the foregoing reasons, this Court is of the opinion that Magistrate Judge Kaull's Report and Recommendations **[Doc. 19]** should be and is **ADOPTED**. Further, the Plaintiff's Objections **[Doc. 20]** are **OVERRULED**. Therefore, the Defendant's Motion for Summary Judgment **[Doc. 17]** is **GRANTED** and the Plaintiff's Motion for Summary Judgment **[Doc. 13]** is **DENIED**.

Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint [Doc. 1] and **ORDERS** the this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.
**DATED**: October 6, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE